**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 08-CR-35 |
| ) | (Civil Case 08-CV-538-TCK-TLW) |
| **SANDRA GAYLE PERRY,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion") (Doc. 104); the Government's response (Doc. 125); and Defendant's reply (Doc. 129). Defendant also wrote a letter to the Court (Doc. 109), which the Court construes as a motion to supplement her § 2255 Motion.

**I.     Background**

    A.     Underlying Crime

On February 6, 2008, Defendant was charged by Indictment with bank robbery along with co-defendants Summer Dawn Perry ("Perry"),[1] J. Allan Sitsler ("Sitsler"),[2] and Andy Thornton ("Thornton")[3]. (*See* Doc. 16.) Originally, a Complaint charged Sitsler alone for the robbery. The Complaint contained an affidavit from Daniel V. Risner ("Agent Risner"), Special Agent with the Federal Bureau of Investigation ("Risner Affidavit"), which provided details of the robbery based on interviews with bank employees and customers. Specifically, Agent Risner testified that on

---

[1] Perry is Defendant's daughter.

[2] At all relevant times, Sitsler was Perry's boyfriend.

[3] Thornton is Perry's half-brother.

December 12, 2007, at approximately 12:30 p.m., a white male, later identified as Sitsler, entered the Bank of America ("BOA") in Catoosa, Oklahoma. Sitsler was met by Defendant, who was an officer of BOA at the time. Sitsler gave Defendant a note which stated, "I'm deaf, my friend is in the car with a police scanner and if you call the police I'll shoot everybody." (Risner Aff. 1.) The note also indicated that Sitsler wanted $50,000.00. According to Risner's Affidavit, Defendant stated that Sitsler showed her the black handle of a gun which was under his sweatshirt. Another bank officer, Theresa Knight ("Knight"), then entered the bank, and Defendant explained to Knight what was going on and asked for help. Knight collected money from the bank to give to Sitsler. During the course of the robbery, Defendant also informed Knight that the robber wrote an additional note, which read, "You've got two minutes or I'll start to shoot everybody." (*Id.* 2.) The total loss to the bank was $111,593.00.

The Risner Affidavit further states that on January 11, 2008, Tulsa Crimestoppers received a tip that it was Defendant, Perry, and Sitsler who had robbed BOA. Police investigators interviewed Sitsler on January 24, 2008. Sitsler told the officers that Defendant and Perry began planning the robbery approximately two or three weeks before it took place. According to Risner, Sitsler stated that Defendant did most of the planning,[4] and that he received the final details of the plan from Defendant and Perry approximately one week prior to the crime. Sitsler also stated that they borrowed a green pickup truck from Thornton to use as a getaway vehicle. Due to difficulties in starting the truck, Sitsler and Perry asked Thornton to serve as the getaway driver on the morning

---

[4] This statement was reiterated during Sitsler's plea colloquy, wherein he told the Court that it was Defendant who came up with the idea of robbing the BOA in Catoosa.

2

of the robbery. Sitsler further explained that before the robbery, he, Perry, and Thornton parked at a convenience store across from the bank and called Defendant to ensure that everything was ready. Defendant confirmed she was ready, and Sitsler, Perry, and Thornton then proceeded to the bank. Sitsler also admitted to having a BB gun hidden under his sweatshirt while committing the robbery. During a review of digital photographs taken during the robbery, investigators noted that, despite Defendant's representations to Knight, at no time did Sitsler write any additional notes. Investigators also noted that in one digital photograph, Defendant turned away from Sitsler after he entered BOA and had a "large smile on her face." (*Id.* 6.)

B.   Guilty Pleas

On March 13, 2008, Defendant, Sitsler, and Perry pled guilty to the Indictment. Thornton pled guilty on April 10, 2008. In her petition to enter a plea of guilty, Defendant stated:

> On December 12, 2007, in the Northern District of Oklahoma, I, along with other individuals, planned and caused to be executed a robbery of a Federal Deposit Insurance Corporation bank at the Bank of America. This robbery was affected by the use of a co-defendant with a BB gun in violation of Title 18, §§ 2113(a), 2113(d), and 2. Approximately $111,000 was taken from the bank.

(*See* Doc. 49-1 at 2.) During the plea colloquy, Defendant provided additional details of the robbery.[5] Therein, Defendant testified that one week prior to the robbery, Perry and Sitsler came to Defendant's house and, after what first started out as a joke, the three of them decided to rob a bank. Defendant agreed with the Court's statement that she planned the robbery of the bank, helped to carry out said robbery, and that the robbery involved taking money by violence, force, or intimidation. Defendant admitted that she used her position as Consumer Market Manager of the

---

[5] The Court has recently listened to the recording of the plea colloquy, and the description of the colloquy provided herein is based upon such recording.

bank in order to facilitate the robbery and specifically outlined how she, Sitsler, and Perry arranged for Sitsler to approach her and act like he was pulling a gun on her in order to get money from the bank. Defendant explained that she believed Sitsler's gun to be a plastic gun and did not know that it was actually a BB gun until after the commission of the robbery. Defendant further stated that she received approximately $10,000.00 of the stolen money, which she largely "gambled away," although it was intended for her to receive a larger sum. Finally, Defendant also testified that she did not know of Thornton's involvement in the robbery until she was detained and questioned by the FBI.

    C.    <u>Sentencing</u>

A Presentence Report ("PSR") was completed by the U.S. Probation Office in anticipation of Defendant's sentencing. The PSR set a base offense level of 20 for Defendant's violation of 18 U.S.C. § 2113(a) and (d) and then added the following: (1) two levels because the object of the offense was to take property from a financial institution; (2) three levels because Sitsler brandished a dangerous weapon – namely, a BB gun – in the course of the offense; (3) two levels because the loss amount exceeded $50,000.00; and (4) three levels because Defendant held a position at the bank in upper management and abused that position of trust to facilitate the commission of the robbery. (*See* PSR ¶¶ 12-17.) The PSR then deducted three levels because Defendant accepted responsibility, resulting in a total offense level of 26. (*Id.* ¶¶ 20, 21.) Because Defendant had no prior convictions, her criminal history category was category I, and the guideline range was 63-78 months imprisonment. (*Id.* ¶¶ 24, 35.)

Before sentencing, Defendant filed a Sentencing Memorandum, seeking a downward departure or variance based on her lack of criminal history and exemplary conduct. (*See* Doc. 68.) The Government responded to Defendant's sentencing memorandum as follows:

> [T]he planning of this armed robbery took place over several weeks, prior to the actual robbery itself. As a bank manager, [Defendant] was in a unique position to know how to accomplish the robbery and to instruct each of her co-conspirators on how they should act, and how these actions would make the robbery successful. The evidence in this case indicates that several dry runs were practiced, the date of the original robbery was changed to allow [Defendant] herself to be at the branch that was robbed, and in fact [Defendant] made arrangements to be at the Catoosa Branch on the day of the robbery. [Defendant] provided false information to bank personnel and law enforcement which allowed her co-conspirators to escape. This evidence indicates significant planning went into the execution of this robbery.

(Doc. 69 at 1-2.) The Government further noted that "the fact that a dangerous weapon was used in this offense prohibits an aberrant behavior departure." (*Id.* at 2 (citing U.S.S.G. § 5K2.20).)

At sentencing, the Court denied Defendant's request for a downward departure or variance and sentenced Defendant to 65 months imprisonment. In denying said motion, the Court cited U.S.S.G. § 5K2.20 and found that the presence of the dangerous weapon and the fact that the crime involved significant planning counseled against a departure or variance. The Court also noted that Defendant, even more than her co-defendants, had the means to carry out the robbery given her position at and knowledge of the bank. Defendant did not appeal her conviction or sentence.

The Court also imposed sentences upon Sitsler, Perry, and Thornton. Specifically, the Court sentenced Sitsler to 63 months imprisonment and Perry to 57 months imprisonment. The Court granted Thornton a two-level variance for his role as a minor participant in the offense and sentenced him to 41 months imprisonment. The Court granted this variance after finding that Thornton knew about the robbery, knowingly participated in the robbery, but was not involved in

5

the planning of the offense, and was only brought in on the morning of the robbery due to the fact that his truck would not start.

Now before the Court is Defendant's § 2255 Motion, which sets forth four grounds of relief. Specifically, Defendant argues that: (1) she was falsely charged with "armed" robbery because she did not have any knowledge that a weapon would be used in the robbery; (2) she received a more serious sentence than Thornton; (3) the Government wrongly credited Sitsler's statements that Defendant planned the crime; and (4) the Court denied her motion for downward departure based on false statements by Sitsler since she was not the primary planner of the robbery. Defendant acknowledges that she failed to appeal any of these issues, but claims that this failure was due to poor advice from her attorney.

## II.     Motion to Supplement

In a letter to the Court, Defendant sought to include additional authorities in her § 2255 Motion. (*See* Doc. 109 at 3 (listing additional case law for the Court to consider).) The Court therefore construes the letter as a motion to supplement. For good cause shown, the Court grants Defendant's motion to supplement and considered such authorities in ruling on Defendant's § 2255 Motion.

## III.    Analysis of § 2255 Motion

"Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). Therefore, "a defendant may not raise claims that were not presented on direct appeal unless he can show cause and prejudice resulting from the error." *United States v. Cook*, 45 F.3d 388, 392 (citing *Warner*, 23 F.3d at 291). "A defendant may establish cause for his procedural default by showing

that he received ineffective assistance of counsel in violation of the Sixth Amendment." *Cook*, 45 F.3d at 392 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

To show ineffective assistance of counsel, the defendant must show both that counsel's representation was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011). Deficient performance is demonstrated by showing that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. In order to show prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. The court need not analyze both the performance and prejudice prongs of *Strickland*, however, if the defendant "fails to make a sufficient showing of one." *See United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009) (citing *Boltz v. Mullin*, 415 F. 3d 1215, 1222 (10th Cir. 2005)).

Further, when a defendant alleges that counsel rendered ineffective assistance by failing to raise an issue on appeal, the Court examines the merits of the omitted issue. *See Cook*, 45 F.3d at 393. "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.' *Id.* (citing *United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir. 1993)). The Court will accordingly determine the merits of the omitted issues as identified by Defendant.

A. Whether Defendant was Falsely Charged with "Armed" Robbery

Defendant first contends that she was wrongfully charged with "armed" robbery because she had no knowledge that a weapon would be used in the robbery. (*See* § 2255 Motion 5 ("I was not in any way a party to; nor did I have any knowledge, that a weapon would be used in the offense.").) Defendant's statements during the plea colloquy contradict this ground of relief, however. There, although Defendant stated that she did not know that Sitsler was going to use a BB gun during the robbery, she stated that she instead expected him to use a plastic gun. Defendant also agreed with the Court that the robbery at issue involved taking money by violence, force, or intimidation and that she, Sitsler, and Perry planned for Sitsler to approach her and act like he was pulling a gun on her. These admissions are sufficient to demonstrate that Sitsler's use of a dangerous weapon was foreseeable by Defendant. *See Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946) (noting that conspiracy liability is dependent on actual knowledge of co-conspirator's actions or whether those actions were reasonably foreseeable); *United States v. Anderson*, 189 F.3d 1201, 1207 n. 3 (10th Cir.1999) (noting that a criminal conspirator will be "criminally responsible for substantive crimes committed by other conspirators during the course of and in furtherance of the conspiracy that are reasonably foreseeable").

Further, even if the weapon anticipated by Defendant – namely, a toy gun – had been used by Sitsler instead of the BB gun, such a situation would have still met the elements of a conviction under 18 U.S.C. §§ 2113(a),(d). *See United States v. Davis*, 437 F.3d 989, 993 (10th Cir. 2006) ("To convict a defendant of armed bank robbery [under 18 U.S.C. §§ 2113(a),(d)], the government has the burden to prove that (1) the defendant took, or attempted to take, money belonging to a bank, credit union, or any savings and loan association; (2) by using force and violence, or intimidation;

8

(3) the deposits of the institution were federally insured; and (4) in committing or attempting to commit the offense, the defendant assaulted any person, or put in jeopardy the life of any person by the use of a dangerous weapon or device."); *United States v. Hargrove*, 201 F.3d 966, 968 n.2 (7th Cir. 2000) (noting "a toy gun satisfies the armed robbery statute" and further stating that "every circuit court considering even the question of whether a fake weapon that was never intended to be operable has come to the same conclusion") (citing *United States v. Hamrick*, 43 F.3d 877, 882-83 (4th Cir. 1995); *United States v. Garrett*, 3 F.3d 390, 391 (11th Cir. 1993); *United States v. Cannon*, 903 F.2d 849, 854-55 (1st Cir. 1990); *United States v. Medved*, 905 F.2d 935, 939-40 (6th Cir. 1990); *United States v. Martinez-Jimenez*, 864 F.2d 664, 666-67 (9th Cir. 1989)). Therefore, because the Court finds that Defendant's first ground of relief is without merit, Defendant is unable to show that she was prejudiced by counsel's failure to raise it on appeal.

B.  Disparity in Sentences Between Defendant and Thornton

Second, Defendant argues that she was "discriminated against" because Thornton was given a less serious sentence – namely, 41 months – even though he had a prior record and Defendant had no criminal history at the time of sentencing. (§ 2255 Mot. 7.) Defendant further argues that she was "singled out even though [she] was the only one who had never been in any trouble." (*Id.*) The Court finds that this ground of relief is also without merit because there existed significant disparities between Defendant's and Thornton's involvement in the robbery that justified the sentences given by the Court. Specifically, Defendant was involved in the planning of the robbery and used her position as an officer of the bank in order to execute the robbery. The Court applied a two-level enhancement to Defendant's offense level based on the fact that she violated a position of trust as a bank employee. Thornton, on the other hand, was only recruited as a getaway driver

9

on the morning of the robbery and had no role in the planning of the offense. The Court therefore granted a two-level variance based on Thornton's minor role in the offense. Given these factual distinctions underlying the disparity in sentences, the Court finds that Plaintiff is unable to show prejudice due to her counsel's failure to raise this issue on appeal.

    C.    <u>Defendant's Role in Planning the Robbery and Court's Denial of Motion for Downward Departure</u>

In her third and fourth grounds for relief, Defendant argues that the Court and the Government wrongfully believed Sitsler's statements regarding her role in the offense, resulting in the denial of her motion for downward departure. Once again fatal to Defendant's argument, however, are the statements made to the Court during her plea colloquy. While Defendant might dispute the particular information offered by Sitsler, she admitted that she participated in the planning of the robbery in discussing the details of the robbery with the Court. In denying the motion for downward departure, the Court relied on such admission and the fact that she, even more than her co-defendants, had the means to carry out the robbery given her position at and knowledge of the bank. Because the Court's ruling was largely based on Defendant's own admissions, Defendant is unable to show prejudice based on her attorney's failure to challenge the truthfulness of Sitsler's testimony.

## IV. Certificate of Appealability

Rule 11 of the *Rules Governing Section 2255 Cases in the United States District Courts* instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."

A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## V. Conclusion

For the reasons stated herein, Defendant's motion to supplement (Doc. 109) is GRANTED, and Defendant's § 2255 Motion (Doc. 104) is DENIED. A certificate of appealability is denied, and a separate Judgment will be entered forthwith.

**DATED THIS 16th day of August, 2011.**

_Terence C Kern_
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**